IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                     No. 1:24-cr-10064-JDB-1

DESMOND JAMOND STEWART,

    Defendant.

_____

ORDER REGARDING IMPOSITION OF U.S.S.G. § 3A1.2(C)(1) ENHANCEMENT
_____

In a two-count indictment entered October 15, 2024, the Defendant, Desmond Jamond Stewart, was charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). (Docket Entry ("D.E.") 1.) He entered a guilty plea to Count 1 on March 19, 2025, and the matter was set for sentencing. (D.E. 22.)

The Presentence Investigation Report ("PSR") stated that, on May 26, 2024, a Gibson County, Tennessee, Sheriff's Office deputy was in the process of conducting a traffic stop when an unrelated vehicle, a silver Ford Escape, drove past him. He could smell a strong odor of marijuana emanating from the vehicle. A fellow deputy responded to his call for assistance and began searching for the Escape. When he observed it, he began following it. The vehicle increased its speed and passed another car on a curve. The officer activated his emergency lights, but the subject vehicle refused to stop and led several officers on a prolonged high-speed chase, at times driving in the wrong direction and at one point swerving intentionally to strike the front passenger side fender of a pursuing Gibson County patrol car. The impact caused the Escape to blow a

1

passenger side rear tire. J'Lon Lamar Dance,[1] later determined to be the driver, continued driving on the tire rim for some distance before coming to a stop, at which point he and the Defendant, his passenger, fled on foot. They were apprehended a short time later. Stewart was observed tossing two firearms, which were later found to be loaded and containing high-capacity magazines, into some bushes as he ran. After he was captured, a search of his person revealed a small baggie of marijuana in his front pocket. More marijuana and ecstasy were discovered in the vehicle.

The PSR applied the six-level Official Victim enhancement under § 3A1.2(c)(1) of the United States Sentencing Guidelines (the "Guidelines" or "U.S.S.G.") to Stewart's base offense level in light of Dance's intentional crash into the police cruiser. (D.E. 27 ¶ 16.) Defendant has challenged application of the enhancement is inappropriate.

Section 3A1.2(c)(1) permits the enhancement "[i]f, in a manner creating a substantial risk of serious bodily injury, the defendant or a person for whose conduct the defendant is *otherwise accountable*[,] knowing or having reasonable cause to believe that a person was a law enforcement officer, assaulted such officer during the course of the offense or immediate flight therefrom[.]" U.S.S.G. § 3A1.2(c)(1) (emphasis added). The Application Note explains that subsection (c) "applies in circumstances tantamount to aggravated assault . . . against a law enforcement officer, committed in the course of, or in immediate flight following, another offense[.]" *Id.*, Application Note 4(A). The Government, which bears the burden of establishing a sentencing enhancement by a preponderance of the evidence, *United States v. Alvarado*, 95 F.4th 1047, 1053 (6th Cir. 2024), must therefore show that Stewart was "otherwise accountable" for Dance's actions.

---

[1] Dance has not been charged in this matter but was charged in Gibson County General Sessions Court with two counts of aggravated assault and one count of reckless endangerment. Defendant was apparently not charged in state court.

Section 3A1.2(c)(1) does not define "otherwise accountable." Courts have thus applied the Relevant Conduct guideline, which provides that, "[u]nless otherwise specified, . . . adjustments in Chapter Three [of the Guidelines], shall be determined" under its provisions. U.S.S.G. § 1B1.3(a); *see Witte v. United States*, 515 U.S. 389, 393 (1995) ("Under the Sentencing Guidelines, the sentencing range for a particular offense is determined on the basis of all 'relevant conduct' in which the defendant was engaged and not just with regard to the conduct underlying the offense of conviction."); *see also United States v. Patton*, 927 F.3d 1087, 1100 (10th Cir. 2019) (finding that applying § 1B1.3(a)(1)(B)'s definition of relevant conduct to the Official Victim guideline was in keeping with the text of the Guidelines and the history of the Guidelines amendments); *United States v. Parsons*, 664 F. App'x 187, 191-92 (3d Cir. 2016) (applying § 1B1.3(a)(1)(B)'s definition of "otherwise accountable" to Official Victim enhancement appropriate); *United States v. Null & Mylant*, Nos. 98-4184, 99-3714, 2000 WL 1597864, at *6 (6th Cir. Oct. 18, 2000) (relying on § 1B1.3 in determining whether defendant was "otherwise accountable" for partner in crime's conduct); *United States v. Gonzales*, 996 F.2d 88, 93 (5th Cir. 1993) (applying relevant conduct restrictions of § 1B1.3 to § 3A1.2 enhancement).

Under the Relevant Conduct guideline,

> [u]nless otherwise specified, . . . adjustments in Chapter Three [of the Guidelines] shall be determined on the basis of the following:
>
> 1(A)   all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and
>
> (B)   in the case of a jointly undertaken criminal activity, (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all acts and omissions of others that were—
>
> >   (i)   within the scope of the jointly undertaken criminal activity,
> >
> >   (ii)   in furtherance of that criminal activity, and

> (iii) reasonably foreseeable in connection with that criminal activity;
>
> that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense[.]

U.S.S.G. § 1B1.3(a)(1).

The Probation Office noted that Defendant was on parole in Carroll County, Tennessee, Circuit Court for evading arrest by fleeing an attempted traffic stop at a high rate of speed and ramming into a pursuing police vehicle—actions very similar to the events that occurred in this case—in 2022—and enumerated additional previous acts of flight from law enforcement. (D.E. 27, 33.) It was the opinion of the Probation Office that Stewart's possession of marijuana and two firearms as a prohibited person, coupled with his continued flight with Dance following the wreck, would suggest that the pair had engaged in joint criminal activity and then attempted to avoid capture. It further suggested that, as a parolee, Defendant had a greater incentive to escape capture than his cohort. The Probation Office stated:

> Based on the circumstances of the instant federal offense described above, the probation office continues to opine that the defendant "*aided or abetted, counseled, commanded, induced, procured, or willfully caused*" J'Lon Dance to flee from law enforcement officers. It can be concluded that based on a preponderance of the evidence before the Court that the jointly undertaken criminal activity between the two was to evade arrest. Mr. Dance's fleeing at a high rate of speed and the pair's continued flight on foot were in furtherance of their criminal activity, which was avoiding arrest while in possession of illicit substances and illegal possession of firearms. Therefore, Mr. Dance's actions of ramming into the pursuing law enforcement vehicle was reasonably foreseeable as a method to deter or slow [Gibson County Sheriff's Office] deputies' pursuit of their vehicle.

(D.E. 33 at PageID 115.)

The Government concurs with the Probation Office's opinion and argues Defendant had a motive to flee because he was carrying two loaded firearms while prohibited from doing so based on his status as a convicted felon. The jointly undertaken criminal activity required by § 1B1.3 is

present, the Government contends, in the form of joint illegal drug possession and the act of striking the police vehicle in an attempt to avoid apprehension for that crime.

In his objections to the PSR, Defendant argues that § 3A1.2 should not be assessed against him because (1) the Sixth Circuit has not addressed the provision's application to an automobile's passenger in a published opinion and (2) he is not "otherwise accountable" for Dance's actions.

The Sixth Circuit has approved application of the six-level Official Victim enhancement in cases involving a driver who strikes a law enforcement vehicle in an attempt to evade capture. *See United States v. Coleman*, 664 F.3d 1047, 1051-52 (6th Cir. 2012). Indeed, Defendant concedes as much. It does not appear, however, that the Sixth Circuit has provided direct published guidance on its application with respect to a defendant's status as a passenger.

In *Null and Mylant,* Thomas Null and Joseph Mylant were allegedly partners in an enterprise of robbing armored cars and had been under investigation by law enforcement for some time. *Null & Mylant*, 2000 WL 1597864, at *1. In an attempt to thwart the defendants' planned robbery of a Brinks armored truck in March 1998, officers observed the two leave Null's Chevrolet van in a Kmart parking lot and proceed together in a stolen Ford Aerostar van to where the defendants believed the armored car would stop near a bank.[2] *Id.* After the truck failed to appear, the Ford van returned to the Kmart with Mylant at the wheel. *Id.* at **1-2. As it did so, it was approached by a vehicle driven by a SWAT officer. *Id.* at *2. The van slowed, and Null jumped out, only to be quickly arrested. *Id.* Upon being confronted by law enforcement, Mylant intentionally struck a nearby SWAT van with the Ford and then attempted to strike officers on foot. *Id.*

---

[2]Officers had warned the armored truck to abort its route. *Null & Mylant*, 2000 WL 1597864, at *1.

On appeal of his sentence, Null challenged the application of the Official Victim enhancement to him, arguing that he was not "otherwise accountable" for Mylant's conduct in attempting to run over law enforcement personnel. *Id.* at \*3. He averred, among other things, that it was not reasonably foreseeable to him that Mylant would assault officers during the course of their escape and that a violent escape attempt was not part of the conspiracy agreement. *Id.* at \*6. The appellate court was unpersuaded, finding that, in obvious preparation for a violent confrontation, both defendants had donned bulletproof armor and amassed an arsenal of firearms, and that Null had a home firing range and gym containing a combat dummy, indicating Mylant's violent attempt at escape was in furtherance of a joint criminal activity and reasonably foreseeable on the part of Null. *Id.* at \*7.

Defendant struggles, in conclusory fashion, to distance himself from *Null* by asserting that there was no jointly undertaken criminal activity between him and Dance "akin to a conspiracy to commit robbery." (D.E. 29 at PageID 99.) Rather, "[t]he arrest began with police attempting to make a simple traffic stop." (*Id.*) However, this characterization is belied by the PSR, which, as noted above, indicated that the men had drugs and guns in their vehicle, Stewart also had firearms and drugs on his person, and both Defendants attempted to evade police. The fact that the "jointly undertaken criminal activity" here may not have risen to the level of an armored car robbery is irrelevant.

Instead, Stewart urges the Court to adopt the Eighth Circuit's decision in *United States v. Iron Cloud*, 75 F.3d 386 (8th Cir. 1996), in which the court held that, in order for a defendant to be "otherwise accountable" for the conduct of another under § 3A1.2, "there must be some evidence of causation on the part of the defendant: that is, that the defendant expressly or impliedly ordered, encouraged, or in some way assisted in the assailant's conduct." *Iron Cloud*, 75 F.3d at 390. However, the *Iron Cloud* court made no mention whatever of § 1B1.3. Given that fact, and

6

its lack of precedential value here, the Court declines to follow it.  *See Patton*, 927 F.3d at 1100, *supra* (rejecting *Iron Cloud* on the grounds that the Relevant Conduct provision, upon which the *Iron Cloud* court did not rely, was "more in keeping with . . . the text of the Guidelines[] and the history of the Guidelines amendments").

At the sentencing hearing conducted in this matter on August 14, 2025, the parties offered further argument on the enhancement issue, prompting the Court to continue the proceedings in order to permit the parties to brief whether an unpublished case from the Ninth Circuit, *United States v. Gonzalez-Rizo*, No. 98-50352, 1999 WL 436193 (9th Cir. June 16, 1999), offered additional support for the Government's position.

In that case, the defendant, who was wearing a bulletproof vest, entered the United States as a passenger in a truck carrying 1,600 pounds of marijuana and driving on the wrong side of the road.  *Gonzalez-Rizo*, 1999 WL 436193, at *1.  At some point, the truck struck some police officers.  *Id.*  Upon his arrest, Gonzalez-Rizo produced no identification and gave a false name.  *Id.*  On appeal of his conviction, he argued that the district court erred in imposing the Official Victim enhancement at sentencing because he was only a passenger in the truck.  *Id.*  The argument was rejected out of hand on the grounds that the Ninth Circuit "has upheld [the enhancement's] application to the passenger of a vehicle that was used to assault an officer," citing *United States v. Alexander*, 48 F.3d 1477 (9th Cir. 1995).[3]  *Id.*

In *Alexander,* four armed men robbed a bank and then fled in a van.  *Alexander*, 48 F.3d at 1482.  Law enforcement officers arrived at the scene in time to pursue the van as it left the bank.  *Id.*  A high-speed chase ensued, during which the men fired at their pursuers.  *Id.*  Eventually, the van stopped in a parking lot and the four split up, two getting into a Camaro and the other two into

---

[3] *Alexander* and *Gonzalez-Rizo* dealt with a previous version of § 3A1.2(c)(1).

7

a Camry. *Id.* The robbers continued firing as the pursuit resumed. *Id.* At one point during the chase, the Camaro nearly ran over a motorcycle officer. *Id.* at 1493. The appellate court upheld application of the enhancement to the Camaro's driver as well as his passenger. *See id.* at 1492-93.

Here, the Court finds that the Government has borne its burden in establishing that the six-level Official Victim enhancement is applicable to the Defendant as he was "otherwise accountable" for the actions of Dance. Indeed, the very language of the guideline—permitting its application to the defendant or a person for whose conduct the defendant is *otherwise accountable* upon the assault on a law enforcement officer—clearly indicates that it encompasses the actions of one other than the actual perpetrator of the assault. Pursuant to the Relevant Conduct provision, the PSR shows that Stewart and Dance were engaged in "jointly undertaken criminal activities" consisting of the illegal possession of drugs and firearms,[4] as well as the evasion of law enforcement authorities. Flight from police in an effort to avoid detection of the pair's illegal possession of contraband was within the scope and furtherance of their criminal activity, and harm to law enforcement officers during an attempt to avoid detection was reasonably foreseeable to Stewart and, therefore, attributable to him under § 1B1.3. The Court further finds there are sufficient facts from which it could reasonably infer that Stewart at the very least aided and abetted Dance in the vehicle's flight. Defendant has pointed the Court to no case, and the undersigned has located none, that insulates him from the § 3A1.2(c)(1) enhancement merely because he was a passenger in a fleeing vehicle.

Based on the foregoing, the Court finds that the Probation Office correctly applied U.S.S.G. § 3A1.2(c)(1)'s six-level Official Victim enhancement to the Defendant. Accordingly, the Court

---

[4] Dance is also a convicted felon.

8

need not consider the Government's alternative request that U.S.S.G. § 3C1.2's two-level Reckless Endangerment enhancement should apply.

    IT IS SO ORDERED this 3rd day of October 2025.

s/ J. DANIEL BREEN  
UNITED STATES DISTRICT JUDGE
